UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MARLON MARCANO and YMA SU-
LING SCARBRIEL,

        Plaintiffs,

v.                                  Case No: 6:24-cv-571-JSS-RMN

SAMIR PAULINO, KENNETH
DALE, and JOHN MINA,

        Defendants.

_____/

## ORDER

      Defendants—Sheriff John Mina, Corporal Kenneth Dale, and Deputy Samir Paulino—each move for summary judgment. (Dkts. 66, 68, 69, 93, 94, 95). Plaintiffs, Marlon Marcano and Yma Su-Ling Scarbriel, oppose the motions. (Dkts. 87, 88, 89.) Upon consideration, for the reasons below, Defendants' motions are granted in part.

## BACKGROUND[1]

      Miya Marcano, a nineteen-year-old woman, could not be reached the night of September 24, 2021. (Dkt. 67-1 at 10.) At 9:23 P.M.—after Miya[2] had seemingly missed a flight and could not be reached—her mother, Plaintiff Yma Su-Ling Scarbriel, called the police to request a wellness check. (*Id.* at 10–11; Dkt. 67-2 at 5.)

---

[1] In deriving the facts from the record, the court "draw[s] all inferences and view[s] all evidence in the light most favorable to" Plaintiffs as the nonmoving parties. *See Mobley v. Palm Beach Cnty. Sheriff Dep't*, 783 F.3d 1347, 1352 (11th Cir. 2015).

[2] The court refers to Miya Marcano as Miya and Marlon Marcano as Marcano throughout this order to avoid confusion.

Around 10:00 P.M., Paulino arrived at Miya's apartment and knocked at Miya's door
but received no response.  (Dkt. 67-1 at 11.)  Paulino called Scarbriel, who informed
Paulino that Miya's roommate was on her way and would let him in.  (*Id.*)  When
Miya's roommate arrived, Paulino lifted her up through an open window into Miya's
room.  (Dkt. 67-1 at 12; 67-2 at 10, 32, 58, 63; 67-3 at 115–18.)  The locks on Miya's
window had been broken, and there was blood on Miya's pillow.  (Dkt. 67-1 at 12–13,
27, 29, 109, 116; Dkt. 67-2 at 8, 11, 14, 23, 27–28, 32, 35.)  A bookshelf blocked the
bedroom door, and an indentation on the rug indicated that the bed had been recently
moved by two to three inches.  (Dkt. 67-1 at 12, 17; Dkt. 67-2 at 12, 14, 23.)  In
addition, the presence of broken jewelry, a boxcutter, and Miya's teddy bear—which
she always took with her on trips—potentially signaled that she was in danger.  (Dkt.
67-1 at 12–13, 17, 27, 32; Dkt. 67-2 at 8–9, 11–12, 14, 32, 35–36.)  Miya's friends
informed Paulino that Miya had declined romantic advances by a maintenance
employee, Armando Caballero, who worked with Miya.  (Dkt. 67-1 at 15; Dkt. 67-12
at 3.)  Before departing, Paulino called his supervisor, Dale. (Dkt. 67-2 at 37, 52.)

Paulino returned to Miya's apartment in about an hour in response to a second
call regarding Miya's disappearance.  (Dkt. 67-1 at 16; Dkt. 67-2 at 10.)  A security
guard mentioned to Paulino that he had heard strange noises coming from one of the
maintenance sheds.  (Dkt. 67-2 at 14–16, 22.)  The security guard also took fingerprints
from Miya's bedroom window, but Paulino declined to accept the fingerprints from
the security guard.  (Dkt. 67-2 at 10, 22–23.)  Paulino told the security guard that the
case was not a "top priority" and that a missing person needed to be elderly or have a

disability to make the case a high priority. (*Id.* at 23.) Paulino then left once again. (*Id.*) Shortly thereafter, Miya's family arrived, as did Caballero. (*Id.* at 23–24.) Caballero identified himself and asked if the family was looking for Miya, even though office staff had not been notified that she was missing. (*Id.* at 24.)

Paulino arrived for the third time at 4:54 A.M. in response to a call at 3:52 A.M. (Dkt. 67-2 at 10–12.) Once Paulino arrived, the security guard told Paulino that Caballero was there and had been caught in several inconsistent statements about his relationship with Miya. (*Id.* at 17–18, 24.) Paulino was also informed that Caballero had visible injuries to his face as well as swelling and a suspicious mark on his hand. (*Id.*) Miya's family relayed to Paulino that they had seen several items in Caballero's car, including a blanket that looked like Miya's, a cellphone case on the floor, and a screwdriver. (*Id.* at 13, 15, 24, 26, 29.) Paulino did not ask Caballero about the items, nor did he detain Caballero or seek a warrant to search his vehicle. (*Id.* at 12–17.)

At 5:26 A.M., Paulino again spoke with Dale, informing Dale that the family was upset with Paulino's handling of the investigation and that the "alleged suspect" was there and cooperating—a conversation held possibly within earshot of Caballero. (*Id.* at 16.) Paulino did not tell Dale about the reported sounds from the shed and waited until sometime around 5:30 A.M. to ask for access. (*Id.*) Paulino told Miya's family members that there was nothing else the Orange County Sherrif's Office (OCSO) could do and instructed them to wait twenty-four hours for the case to be escalated to the next level. (*Id.* at 29.)

At 11:22 A.M., Deputy Angelo Thomas responded to a call to Miya's apartment. (*Id.* at 6.) After learning the facts and circumstances surrounding Miya's disappearance, Thomas called a detective in the missing persons unit, thereby prompting the Criminal Investigation Division to begin an investigation into Miya's disappearance. (*Id.*) When Sergeant Nathaniel Taylor of the day shift arrived three hours later, he confirmed that Paulino's report lacked certain details and that dayshift officers "were[ no]t privy to" the information until they arrived. (*Id.* at 20.)

On September 27, 2021, Caballero was found dead at his home. (Dkt. 67-1 at 75–79.) Afterwards, detectives searched his car and tracked his past movements in it, ultimately leading the detectives to Miya's location. (*Id.* at 54–70, 84–85, 91, 109–111.) On October 2, Miya was found dead in a wooded area behind the apartments where Caballero used to live. (*Id.* at 109–111.) The parties disagree as to Miya's time of death. (Dkt. 89 at 6–10; Dkt. 88 at 7–8; Dkt. 87 at 7–11.) According to Plaintiffs, although it is unclear when Miya died, there are facts indicating that she was alive during at least the early part of the investigation into her disappearance. (*See* Dkt. 67-19 at 2 (noting that Miya was found with duct tape around her head that "could have originally covered her nose and/or mouth," which would not have been necessary if Miya were already dead); *see also* Dkt. 67-2 at 14, 16, 22 (stating that strange noises were heard coming from a maintenance room to which Caballero had access).)

An internal investigation later determined that Paulino had violated OCSO's Written Directives on General Order 5.1.3(3) by "fail[ing] to take appropriate action on the occasion of a crime, disorder, or other condition deserving police action." (Dkt.

67-2 at 62.)  The investigation also determined that Dale violated General Order 11.1.0
by failing "to follow agency written directives when he failed to notify the on-call
Domestic Crimes detective regarding" Miya, who "qualified as a missing endangered
adult."  (*Id.* at 65.)

Plaintiffs filed their initial complaint in September 2023 in the Circuit Court of
the Ninth Judicial Circuit, in and for Orange County, Florida, Case Number 2023-
CA-015475-O.  (Dkt. 1-1.)  Defendants removed the case to federal court based on
federal question and supplemental jurisdiction.  (*See* Dkt 1 at 2.)  Plaintiffs later filed
an amended complaint, (Dkt. 46), which is the operative pleading.  In the amended
complaint, Plaintiffs assert equal protection and due process violations under the
Fourteenth Amendment through 42 U.S.C. § 1983 in counts I and II and negligence
claims under Florida law against Mina in count III.  (Dkt. 46 at 14–25.)  The amended
complaint does not state whether Defendants are sued in their individual or official
capacities or both.  (*See id.* at 1, 3–4, 14–25.)  Similarly, the complaint does not state
whether the due process claims are based on substantive or procedural due process.
(*Id.* at 14–20.)  Defendants filed motions to dismiss the amended complaint, which
Plaintiffs opposed.  (Dkts. 47, 48, 49, 50, 51, 52.)  As further explained below, through
their responses to the motions to dismiss and motions for summary judgment,
Plaintiffs have abandoned certain claims—including all of Scarbriel's claims, all claims
for survival damages, and all claims based on equal protection.  (*See id.*; Dkts. 87, 88,
89.)

## APPLICABLE STANDARDS

Summary judgment is appropriate if no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). When a party "assert[s] that a fact cannot be or is genuinely disputed," the party "must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . [by] showing that the materials cited do not establish the absence or presence of a genuine dispute[] or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  "The court need consider only the cited materials" when resolving the motion.  Fed. R. Civ. P. 56(c)(3); *see HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 703 F. App'x 814, 817 (11th Cir. 2017) ("This rule was implemented so that a court may decide a motion for summary judgment without undertaking an independent search of the record." (quotation omitted)).

A factual dispute is "genuine" only if "a reasonable jury could return a verdict for the non[-]moving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if the fact could affect the outcome of the lawsuit under the governing law.  *Id.*  The moving party bears the initial burden of identifying those portions of the record showing a lack of a genuine factual dispute.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004).  If the movant shows that no evidence supports the non-moving party's case, the burden then shifts to the non-moving party to show that there are, in fact, genuine factual disputes precluding judgment as a matter of law.  *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006).

To satisfy its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see Burger King Corp. v. Weaver*, 169 F.3d 1310, 1321 (11th Cir. 1999) ("The mere existence of a scintilla of evidence in support of the [non-moving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." (quotation omitted)). Rather, the non-moving party must go beyond the pleadings and "identify affirmative evidence" that creates a genuine dispute of material fact. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *see also HRCC*, 703 F. App'x at 816–17 ("Presenting arguments in opposition to a motion for summary judgment is the responsibility of the non-moving party, not the court." (alteration adopted) (quoting *Blue Cross & Blue Shield of Ala. v. Weitz*, 913 F.2d 1544, 1550 (11th Cir. 1990))). In determining whether a genuine dispute of material fact exists, the court must view the evidence and draw all factual inferences in the light most favorable to the non-moving party and must resolve any reasonable doubts in that party's favor. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007). The court will not weigh the evidence or make findings of fact. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Summary judgment should be granted only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non[-]moving party." *Matsushita*, 475 U.S. at 587.

## ANALYSIS

The court begins by acknowledging Plaintiffs' abandoned claims.  The court then considers Plaintiffs' due process, municipal liability, and negligence claims in turn.

### A. Abandoned Claims

This action was brought by both "Marlon Marcano, individually and as the Personal Representative of the Estate of Miya Marcano[,] and Yma Su-Ling Scarbriel."  (Dkt. 46 at 1.)  In their motions to dismiss, Defendants Dale and Paulino argue that Scarbriel lacks standing and is not a proper party to this action.  (Dkt. 47 at 2–3; Dkt. 49 at 4–5.)  In their response, Plaintiffs "do not address . . . Scarbriel's standing to bring these claims . . . or the ability to recover for Miya's pain and mental anguish under Florida's Wrongful Death Act."  (Dkt. 51 at 2 n.1; *see* Dkt. 52 at 2 n.1 ("Plaintiff Marlon Marcano, the personal representative of the estate of Miya Marcano[,] shall recover for the benefit of the decedent's survivors and estate all damages."); Dkt. 100 at 1 (a recent motion filed by Plaintiffs' counsel that excludes Scarbriel's name from the case caption).)  *Wilf v. Bd. of Regents of the Univ. Sys. of Ga.*, No. 109CV01877RLVGGB, 2012 WL 12888680, at *4 (N.D. Ga. Oct. 15, 2012) (noting that the plaintiff had "not addressed [the d]efendants' standing argument at all" and that "failure to respond to arguments relating to a claim in the plaintiff's initial response to the motion constitutes abandonment of the claim," and citing cases), *report and recommendation adopted by* 2013 WL 12156401, at *1 (N.D. Ga. Feb. 21, 2013), *aff'd*, 544 F. App'x 906 (11th Cir. 2013).  Accordingly, the court treats Scarbriel's

claims as abandoned.  *See Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) ("[W]hen a party fails to respond to an argument or otherwise address a claim, the [c]ourt deems such argument or claim abandoned." (quotation omitted)); *Barnes v. AstraZeneca Pharms. LP*, 253 F. Supp. 3d 1168, 1171 (N.D. Ga. 2017) ("When an argument is raised upon a motion to dismiss that a claim is subject to dismissal, and the non-moving party fails to respond to such an argument, such claims are deemed abandoned and subject to dismissal." (alteration adopted and quotation omitted)); *A1 Procurement, LLC v. Hendry Corp.*, No. 11-23582-CIV, 2012 WL 6214546, at *3 (S.D. Fla. Dec. 13, 2012) (dismissing claims as abandoned where the plaintiff failed to respond to the defendants' arguments concerning the dismissal of those claims).

The complaint also includes survival claims under each count for the "[c]onscious pain and mental anguish suffered by Miya Marcano prior to [her] death," "[f]uneral and burial expenses," and "[l]ost net accumulations."  (Dkt. 46 at 20, 23, 25.)  Dale argues that claims for survival damages should be stricken.  (Dkt. 47 at 4–6.)  Plaintiffs do not respond to this argument, so the court treats it as unopposed and strikes the claims.  (*See* Dkt. 51.)  *See Jones*, 564 F. App'x at 434 ("A party's failure to respond to any portion or claim in a motion indicates such portion, claim[,] or defense is unopposed." (alteration adopted and quotation omitted)); *Valderrama v. Costco Wholesale Corp.*, No. 6:23-CV-153-ACC-EJK, 2024 WL 6912513, at *2 (M.D. Fla. Mar. 12, 2024) (granting the defendant's motion to strike because the plaintiff did "not oppose the [m]otion" and thus appeared "to have abandoned th[e] theory of liability"); *Ecolab, Inc. v. Harris*, No. 5:23-CV-209-AW-MJF, 2023 WL 7131842, at *1 (N.D. Fla.

Oct. 6, 2023) (granting a motion to dismiss to the extent that the plaintiff abandoned claims); *Bargoot v. Sch. Bd. of Palm Beach Cnty.*, No. 21-80849-CIV, 2022 WL 293313, at *7 (S.D. Fla. Feb. 1, 2022) (striking a plaintiff's claim for damages and determining that the plaintiff had abandoned the argument and "waived any argument in opposition" because the plaintiff failed to respond to that portion of the defendant's motion).

Additionally, Plaintiffs originally brought equal protection claims.  (Dkt. 46 at 18–20, 23.)  However, Plaintiffs' responses to the motions for summary judgment clarify that the "[s]ection 1983 claims arise only from the Due Process Clause, not the Equal Protection Clause."  (Dkt. 87 at 16; Dkt. 88 at 10; Dkt. 89 at 16.)  As a result, the court does not consider the equal protection claims and treats them as abandoned. *See Congregation 3401 Prairie Bais Yeshaya D'Kerestir, Inc. v. City of Miami Beach*, 672 F. Supp. 3d 1286, 1295–96 (S.D. Fla. 2023) (granting summary judgment on equal protection claims in favor of the defendant because the plaintiff abandoned them); *Powell v. Am. Remediation & Env't, Inc.*, 61 F. Supp. 3d 1244, 1252 n.9 (S.D. Ala. 2014) ("[W]here the non-moving party fails to address a particular claim asserted in the summary judgment motion but has responded to other claims made by the movant, the district court may properly consider the non-movant's default as intentional and therefore consider the claim abandoned." (quotation omitted)).

## B. Due Process

The Due Process Clause of the Fourteenth Amendment prohibits the government from "depriv[ing] any person of life, liberty, or property, without due

process of law." U.S. Const. amend. XIV, § 1. That clause requires that the government "provide a guarantee of fair procedure in connection with any deprivation of life, liberty[,] or property." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). The clause also contains "a substantive component" that protects fundamental rights. *Reno v. Flores*, 507 U.S. 292, 302 (1993) (emphasis omitted).

"[N]othing in the language of the Due Process Clause itself requires the [s]tate to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). The Due Process Clause "is phrased as a limitation on the [s]tate's power to act, not as a guarantee of certain minimal levels of safety and security." *Id.* "Its purpose [is] to protect the people from the [s]tate, not to ensure that the [s]tate protect[s] them from each other." *Id.* at 196; *accord id.* at 197 ("[A] [s]tate's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause."). Accordingly, "[l]aw enforcement is generally not liable under the Fourteenth Amendment and [s]ection 1983 for harms that may have been prevented by better policing." *Barth v. McNeely*, No. 8:14-CV-00118-EAK, 2014 WL 3101348, at *3 (M.D. Fla. July 7, 2014); *see Town of Castle Rock v. Gonzales*, 545 U.S. 748, 768 (2005) ("[T]he benefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause, neither in its procedural nor in its substantive manifestations." (internal quotation marks omitted)); *Aracena v. Gruler*, 347 F. Supp. 3d 1107, 1114 (M.D. Fla. 2018) ("[T]he Due Process Clause provides no guarantee of government protection from private

violence."). The court first considers procedural due process and then addresses substantive due process.

### 1. Procedural Due Process

A procedural due process claim "requires proof of three elements: (1) a deprivation of a constitutionally[ ]protected liberty or property interest[,] (2) state action[,] and (3) constitutionally[ ]inadequate process." *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003). Constitutionally protected property interests "stem not from the Constitution, but from such sources as statutes, regulations, ordinances, and contracts." *Arrington v. Helms*, 438 F.3d 1336, 1348 (11th Cir. 2006). "The procedural component of the Due Process Clause does not protect everything"; rather, it protects only those interests to which an individual "ha[s] a legitimate claim of entitlement." *Castle Rock*, 545 U.S. at 756 (quotation omitted). "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Id.*

Plaintiffs do not cite any source of law that provides a constitutionally protected interest in having Defendants investigate Miya's disappearance or follow internal policy. (*See* Dkt. 87 at 16–19; Dkt. 88 at 11–13; Dkt. 89 at 17–20.) Without such an interest, Plaintiff cannot maintain a procedural due process claim. *See Koger v. Florida*, 130 F. App'x 327, 335 (11th Cir. 2005) (holding that the plaintiff "failed to identify" "a federal or state law that gave [him] an entitlement to an internal investigation" and, therefore, "there was no constitutionally protected liberty or property interest at stake" to support a procedural due process claim); *see also Vinyard v. Wilson*, 311 F.3d 1340, 1356 (11th Cir. 2002) (concluding that the plaintiff could not show a procedural due

process violation because there is no "federal or state court decision, statute, regulation[,] or other source of law that gives [the plaintiff] an entitlement to an internal investigation by the [s]heriff's [o]ffice of [the plaintiff's] complaints"); *Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1045 (9th Cir. 1994) (holding that police officers do not have an affirmative duty to investigate crimes in a particular manner or to "protect one citizen from another"). Further, under Florida law, "the decision of whether to enforce the law by making an arrest is a basic judgmental or discretionary governmental function that is immune from suit." *Everton v. Willard*, 468 So. 2d 936, 937 (Fla. 1985). Thus, Plaintiff has no entitlement protected by procedural due process. *See Harder v. Hunter*, No. 3:12-CV-799-J-32JBT, 2013 WL 5567327, at *2 (M.D. Fla. Oct. 9, 2013) (dismissing procedural due process claims because the plaintiff had "no legitimate entitlement to . . . having [another] individual arrested"), *aff'd*, 572 F. App'x 904 (11th Cir. 2014).

Plaintiffs invoke *Zinermon v. Burch*, 494 U.S. 113 (1990). (Dkt. 87 at 17; Dkt. 88 at 11; Dkt. 89 at 18.) That case is distinguishable. In *Zinermon*, the government confined the plaintiff to a mental hospital, "infring[ing] on th[e plaintiff's] liberty interest." 494 U.S. at 131. Accordingly, the state itself infringed on the plaintiff's liberty, whereas here, Defendants allegedly failed to act to protect Miya. *See DeShaney*, 489 U.S. at 195–96 ("[T]he Due Process Clause[] generally confer[s] no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests," and "cannot fairly be extended to impose an affirmative obligation on the [s]tate"); *Barth*, 2014 WL 3101348, at *3 (stating that "law

- 13 -

enforcement is not required to protect individuals from third parties," so the failure of sheriff deputies to "protect [the p]laintiff from harms solely created by" private individuals does not violate due process). Further, *Zinermon* focused on whether a "predeprivation process was []possible," as "the Constitution requires some kind of a hearing *before* the [s]tate deprives a person of liberty or property." *Zinermon*, 494 U.S. at 127, 136–37 (concluding that a predeprivation hearing was possible in the involuntary commitment context). Here, any such hearing would be impossible prior to the "[fifteen] of the first most critical [forty-eight] hours of Miya's disappearance" or would waste precious time if conducted during that period. (Dkt. 87 at 18.) *See Hudson v. Palmer*, 468 U.S. 517, 533–34 (1984) (concluding that the state was not in a position to provide a predeprivation process for certain deprivations of property); *Parratt v. Taylor*, 451 U.S. 527, 541 (1981) (holding that the nature of the deprivation made predeprivation process impossible), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).

Thus, Plaintiffs have failed to establish a genuine dispute of material fact that they suffered a violation of an independent, constitutionally protected interest as required to maintain a procedural due process claim. Accordingly, the procedural due process claims fail as a matter of law, and Defendants are entitled to summary judgment. *See Harrington v. County of Suffolk*, 607 F.3d 31, 35 (2d Cir. 2010) (concluding that the plaintiffs did not have a due process claim based on an inadequate police investigation into their son's death because "the duty to investigate criminal acts (or possible criminal acts) almost always involves a significant level of law enforcement

discretion," which "precludes any legitimate claim of entitlement to a police investigation" (quotation omitted)).

## 2. Substantive Due Process

"The Supreme Court explicitly has refused to recognize a substantive due process right to governmental aid or protection, except in a few limited circumstances, even when governmental aid is necessary to protect liberty or property interests from private interference."[3] *Harder v. Hunter*, 572 F. App'x 904, 906 (11th Cir. 2014) (footnote omitted) (citing *DeShaney*, 489 U.S. at 201–02). "[C]onduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience shocking in a constitutional sense." *Waddell v. Hendry Cnty. Sheriff's Off.*, 329 F.3d 1300, 1305 (11th Cir. 2003). "[A] showing of negligence is insufficient to make out a constitutional due process claim." *Id.* Acts "intended to injure in some way" that are "unjustifiable by any government interest" are "most likely to rise to the conscience-shocking level." *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998). However, even "[c]onduct by a government actor that would amount to an intentional tort" will "rise to the level of a substantive due process violation" only if it also "shocks the conscience" or affects rights guaranteed "by the [C]onstitution itself." *Dacosta v. Nwachukwa*, 304 F.3d 1045, 1048 (11th Cir. 2002).

---

[3] Those few limited circumstances where "the Supreme Court has imposed an affirmative responsibility on the government" are "under the Eighth Amendment to provide adequate medical care to incarcerated prisoners" and "under the Fourteenth Amendment . . . to ensure the reasonable safety of involuntarily committed mental patients." *Harder v. Hunter*, 572 F. App'x 904, 906 n.2 (11th Cir. 2014).

Plaintiffs assert that Defendants' actions were arbitrary.[4]  (Dkt. 87 at 21–22; Dkt. 89 at 20–21.)  However, "only the most egregious official conduct can be said to be arbitrary in the constitutional sense."  *Lewis*, 523 U.S. at 846 (quotations omitted).  "[T]hat standard is to be narrowly interpreted and applied."  *White v. Lemacks*, 183 F.3d 1253, 1259 (11th Cir. 1999).  After reviewing the record evidence and drawing all factual inferences in the light most favorable to Plaintiffs, the court concludes that Defendants' actions do not meet this standard.  *See Thomas v. City of Americus*, No. 22-11398, 2023 WL 2485464, at *3 (11th Cir. Mar. 14, 2023) (holding that the defendants' actions were not arbitrary—and no substantive due process claim existed—when police failed to protect a victim of domestic violence by arresting her murderer before her death); *see also Wilcox v. Fenn*, 380 F. App'x 837, 839 (11th Cir. 2010) (explaining that an officer's negligent behavior "was not so egregious as to be arbitrary in the constitutional sense" (quotation omitted)); *Ratlieff v. City of Fort Lauderdale*, 748 F. Supp. 3d 1202, 1243 (S.D. Fla. 2024) (concluding that the defendants' conduct was not sufficiently arbitrary to sustain a substantive due process claim where police did not follow internal policy and impermissibly deployed less-than-lethal weapons without issuing a dispersal order); *Saunders v. City of Lakeland*, No. 8:22-CV-2482-MSS-JSS, 2024 WL 2815642, at *4 (M.D. Fla. June 3, 2024) (determining that the defendant's "alleged failure to train its employees regarding investigation of sexual

---

[4] Plaintiff defines "arbitrary" by citing to *McCawley v. Universidad Carlos Albizu, Inc.*, 461 F. Supp. 2d 1251 (S.D. Fla. 2006).  (Dkt. 87 at 19; Dkt. 89 at 20.)  Although that case evaluates the phrase "arbitrary and capricious," it does not do so in a constitutional context.  *McCawley*, 461 F. Supp. 2d at 1257–59.

assaults, the use of date rape drugs, [and] stalking" was not arbitrary in the constitutional sense and did not state a due process claim).

Plaintiffs contend that their claims "do not rest on a general duty to 'prevent [Miya]'s tragic murder'" but that Defendants "had a duty . . . in undertaking to respond to and investigate calls about Miya's disappearance." (Dkt. 89 at 23.)  No such duty exists.  *See Youngberg v. Romeo*, 457 U.S. 307, 317 (1982) ("As a general matter, a [s]tate is under no constitutional duty to provide substantive services for those within its border."); *Lemacks*, 183 F.3d at 1257 ("[T]he only relationships that automatically give rise to a governmental duty to protect individuals from harm by third parties under the substantive due process clause are custodial relationships, such as those which arise from the incarceration of prisoners or other forms of involuntary confinement through which the government deprives individuals of their liberty and thus of their ability to take care of themselves."); *Bauer ex rel. E.B. v. Chronister*, 618 F. Supp. 3d 1334, 1340 (M.D. Fla. 2022) (dismissing a due process claim where the sheriff's office allegedly failed to protect a victim by arresting her former spouse after a previous murder attempt); *see also Walker v. Florida*, No. 22-cv-00133, 2023 WL 3306566, at *3 (N.D. Fla. Apr. 3, 2023) (collecting cases and holding that there is no constitutional right to a police investigation).[5]

---

[5] In addition, Plaintiff cites *Wallace v. Dean*, 3 So. 3d 1035 (Fla. 2009), to argue that Defendants violated Miya's substantive due process rights.  (Dkt. 87 at 20; Dkt. 89 at 21.)  That case focused on a state wrongful-death claim.  *Wallace*, 3 So. 3d at 1046–52.  Because "the Fourteenth Amendment is not a 'font of tort law' that can be used, through section 1983, to convert state tort claims into federal causes of action," the court does not find the citation helpful or the argument persuasive.  *Neal ex rel. Neal v. Fulton Cnty. Bd. of Educ.*, 229 F.3d 1069, 1074 (11th Cir. 2000) (quoting *Lewis*, 523 U.S. at 848).

Plaintiff also makes a deliberate indifference argument. (Dkt. 87 at 19–20; Dkt. 89 at 20–21, 24.) "In some cases, a state official's deliberate indifference will establish a substantive due process violation." *Waddell*, 329 F.3d at 1306. In a non-custodial setting, "a substantive due process violation would, at the very least, require a showing of deliberate indifference to an extremely great risk of serious injury to someone in [the plaintiff's] position." *Id.* However, "[n]o case in the Supreme Court, or in this Circuit, or in the Florida Supreme Court has held that recklessness or deliberate indifference is a sufficient level of culpability to state a claim of violation of substantive due process rights in a non-custodial context." *Waldron v. Spicher*, 954 F.3d 1297, 1310 (11th Cir. 2020). Similarly, here, Defendants' actions do not violate substantive due process. *See Waddell*, 329 F.3d at 1306 (affirming summary judgment for the defendants because releasing an inmate with a history of drunk driving from jail to work as a confidential informant did not constitute a substantive due process violation even when the inmate proceeded to get into a drunk driving accident, killing one individual and injuring two others); *Walker v. Dixon*, 840 F. App'x 397, 403 (11th Cir. 2020) (concluding that a family services agency's failure to properly investigate and uncover sexual abuse did not violate substantive due process).

In sum, "[t]he affirmative duty of protection that the Supreme Court rejected in *DeShaney* is precisely the duty [Plaintiffs] rel[y] on in this case." *See Pinder v. Johnson*, 54 F.3d 1169, 1174 (4th Cir. 1995); *see also DeShaney*, 489 U.S. at 197 (holding that failure to protect individuals "against private violence simply does not constitute a violation of the Due Process Clause"). Because "this entire circumstance begins and

ends with a private actor, [Defendants] cannot be sued for violating . . . due process rights." *See Aracena*, 347 F. Supp. 3d at 1115.  After carefully reviewing the record in the light most favorable to Plaintiffs, the court concludes that Plaintiffs have failed to demonstrate a genuine dispute of material fact as to whether Defendants violated due process.  Accordingly, Defendants are entitled to summary judgment as to the due process claims.  *See Ratlieff*, 748 F. Supp. 3d at 1239–44 (granting summary judgment on substantive and procedural due process claims where the plaintiff alleged that officers failed to protect her); *Merriweather v. Stringer*, No. 2:21-CV-145-MHT-SMD, 2021 WL 6137515 (M.D. Ala. Dec. 9, 2021) (concluding that a plaintiff failed to state substantive and procedural due process claims based on the alleged failure to investigate a crime or arrest its purported perpetrators), *report and recommendation adopted by* 2021 WL 6137389, at *1 (M.D. Ala. Dec. 29, 2021); *Anderson v. Crews*, No. 5:18CV115-RH-MJF, 2019 WL 2503830 (N.D. Fla. June 16, 2019) (granting summary judgment where officers failed to protect an individual from harm); *see also Smith v. City of Plantation*, 19 F. Supp. 2d 1323, 1328–29 (S.D. Fla. 1998) (granting summary judgment in a failure to train case because the plaintiff did not have a due process right).  Further, because no reasonable jury could find that Defendants violated any constitutional rights, Defendants are entitled to qualified immunity as to any individual-capacity claims.  (Dkt. 68 at 17–18; Dkt. 69 at 12–13.)  *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009) ("Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.").

## C. Municipal Liability

To the extent that Defendants are sued in their official capacities, the claims against them amount to claims against the municipality for which they worked at the time of the alleged misconduct. *See Vineyard v. County of Murray*, 990 F.2d 1207, 1210 n.3 (11th Cir. 1993) ("For liability purposes, a suit against a public official in his official capacity is considered a suit against the local governmental entity he represents." (quotation omitted)); *Webb v. Eng.*, No. 3:19-CV-975-MMH-JBT, 2021 WL 4340426, at *5 (M.D. Fla. Sept. 23, 2021) ("[C]laims against [the sheriff] in his official capacity are municipal liability claims."); *Nix v. Ayers*, No. 8:16-CV-3435-T-17AAS, 2017 WL 9834372, at *2 (M.D. Fla. July 28, 2017) (explaining that "the [s]heriff is the correct governmental defendant in a municipal liability case"). (*See* Dkt. 46 at 1, 3–4, 14–25.) The sole constitutional claims Plaintiffs have asserted against Defendants are based on alleged deprivations of due process rights under the Fourteenth Amendment. (Dkt. 88 at 10.) Because no reasonable jury could conclude that Defendants committed an alleged constitutional violation, the court grants summary judgment on any municipal liability claims. *See Knight ex rel. Kerr v. Miami-Dade County*, 856 F.3d 795, 821 (11th Cir. 2017) ("There can be no policy-based liability or supervisory liability when there is no underlying constitutional violation."); *Persadi ex rel. Persadi v. Fulton Cnty. Sch. Dist.*, No. 1:12-CV-4072-MHC, 2017 WL 11634455, at *8 (N.D. Ga. June 23, 2017) ("Because the [c]ourt finds that the evidence viewed in a light most favorable to [the p]laintiff is insufficient to show that [the p]laintiff's constitutional rights have been

violated, it is unnecessary to determine . . . the impact of [the defendant's] customs, policies, or practices [for municipal liability].").

### D. Negligence

The only basis for addressing Plaintiffs' state negligence claims in federal court is supplemental jurisdiction, and—in light of the foregoing—these claims are the only causes of action that remain in this case. (*See* Dkt. 1 at 2.) When the federal claims that permit supplemental jurisdiction are dismissed before trial, the district court has discretion to remand remaining state claims. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal[ ]law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state[ ]law claims."); *Estate of Amergi ex rel. Amergi v. Palestinian Auth.*, 611 F.3d 1350, 1366–67 (11th Cir. 2010) (noting that a district court has "considerable discretion" in deciding whether to exercise its supplemental jurisdiction); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088–89 (11th Cir. 2004) (encouraging district courts to remand state claims where all federal claims have been dismissed). Thus, the court remands the remaining state claims. *See Cluff v. Miami-Dade County*, No. 21-23342-CIV, 2022 WL 700971, at *8 (S.D. Fla. Feb. 1, 2022) (remanding state claims after dismissing section 1983 claims).

## CONCLUSION

Accordingly:

1. Defendants' motions for summary judgment (Dkts. 66, 68, 69) are **GRANTED in part**.  The motions are granted as to the federal claims.

2. Plaintiffs' claims for survival damages (*e.g.*, Dkt. 46 at 20–21) are **STRICKEN**.

3. Defendants' motions to dismiss (Dkts. 47, 48, 49) are **DENIED as moot**.[6]

4. The Clerk is **DIRECTED** to remand this case to the Circuit Court of the Ninth Judicial Circuit, in and for Orange County, Florida, Case Number 2023-CA-015475-O; to forward a certified copy of this order to that court; to terminate any motions and deadlines pending in this case; and to close the case file.

**ORDERED** in Orlando, Florida, on December 31, 2025.


_____
JULIE S. SNEED
UNITED STATES DISTRICT JUDGE


Copies furnished to:
Counsel of Record

---

[6] *See Abdullah v. City of Jacksonville*, 242 F. App'x 661, 662 (11th Cir. 2007) (affirming when the "district court denied the defendants' motion to dismiss as moot when it granted their motion for summary judgment").